W. H. WALLACE ET AL. v. ASHLEY WALLACE, ELISHA WALLACE, ET AL.

(Filed 30 March, 1921.)

**1. Estates—Rule in Shelley's Case—Wills—Deeds and Conveyances.**

A limitation coming within the rule in *Shelley's case*, recognized as existent in this State, operates as a rule of property, passing when applicable a fee simple, both in deeds and wills, regardless of a contrary intent on the part of the testator or grantor appearing in the instrument.

**2. Same—Statement of Rule.**

Whenever an ancestor by any gift or conveyance took an estate of freehold, as an estate for life, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs or to the heirs of his body as a class to take in succession as heirs to him, such words are words of limitation of the estate, and conveys the inheritance, the whole property to the ancestor, and they are not words of purchase.

**3. Same—Descent and Distribution.**

In order to an application of the rule in *Shelley's case* appreciation of the words "heirs" or "heirs of the body" must be taken in their technical sense, or carry the estate to the entire line of heirs to hold as inheritors under our canons of descent; but should these words be used as only designating certain persons, or confining the inheritance to a restricted class of heirs, the rule does not apply, and the ancestor or the first taker acquires only a life estate according to the meaning of the express words of the instrument.

**4. Same—Heirs of the Body—Children.**

The limitation to W. for life, and after his death to his heirs, if any, in fee simple, and on failure thereof to his next of kin, the word "heirs" is not used in the sense of general inheritors of the estate, but in the sense of issue or children, and in such case W. takes an estate for life, and the rule in *Shelley's case* does not apply.

**5. Same—Next of Kin—Relationship by Blood.**

In a limitation to one for life with remainder to his bodily heirs, if any, and on failure thereof to his "next of kin," the use of the words "bodily heirs" is to be taken in the sense of issue or children; and on the death of the life tenant without such issue or children, the takers, under the term "next of kin," are the nearest blood kin to the exclusion of relationship by marriage, and also of the principle of representation, unless controlling expressions in the instrument show a contrary intent.

**6. Same—Representation.**

In a limitation to W. for life, remainder to his bodily heirs, if any, and upon failure thereof, to his next of kin, on the death of W. without such heirs or issue, under the limitation to the next of kin, without more, the brothers and sisters of W., who first take, will inherit to the exclusion of nephews and nieces of W. who are the children of deceased brothers and sisters.

APPEAL by petitioners from *Devin, J.,* at September Term, 1920, of JOHNSTON.

Special proceedings to sell land for partition, transferred on answers filed to the Superior Court, and heard on case agreed. The facts pertinent to the inquiry and his Honor's judgment thereon are set forth in the case on appeal as follows:

"It was agreed by all the parties thereto, Abell & Ward representing the petitioners; Wellons & Wellons representing the defendant, Selina Wallace; and Parker & Martin representing the defendants other than Selina Wallace, that this case be heard upon the following agreed facts, to wit:

"1. That C. A. Wallace died without birth of issue, and that Selina Wallace is the widow, and that the petitioners and other defendants, except Selina Wallace, are the brothers and sisters of the said C. A. Wallace, deceased, and the representatives of dead brothers and sisters.

"2. That the defendants, Ashley Wallace, Elisha Wallace, and R. I. Wallace, are and were at the time of the death of the said C. A. Wallace his only surviving brothers or sisters; and that all of the petitioners are the representatives and children of deceased brothers and sisters of the said C. A. Wallace; and if the lands described in the petition descend to his heirs at law, then their respective interests are as set out in the petition.

"3. That on 25 February, 1889, Elisha Wallace and wife executed to their son, C. A. Wallace, deceased, a deed for the sixty-two and one-half acres of land described in the petition, which deed is duly recorded in Book 'S,' No. 5, at page 280, of the office of the register of deeds of Johnston County, a copy of which deed is hereto attached, marked Exhibit 'A,' and made a part thereto.

"4. On 27 June, 1919, the said C. A. Wallace made a last will and testament, which was duly probated 23 August, 1919, and is recorded in Will Book No. 6, at page 529, of the office of the clerk of the Superior Court of Johnston County, a copy of which will is hereto attached, marked Exhibit 'B,' and made a part thereof.

"5. The petitioners contend that they, together with the defendants, except the said Selina Wallace, widow, are the owners as tenants in common in the aforesaid lands under and by virtue of the aforesaid deed to C. A. Wallace.

"6. That the defendants, Ashley Wallace, Elisha Wallace, and R. I. Wallace contend that they are the owners of said lands as the only surviving brothers and sisters, and being the next of kin of the said C. A. Wallace, deceased.

"7. That the defendant, Selina Wallace, contends that she is the sole owner of said lands by virtue of said will of the said C. A. Wallace, deceased.

"8. That this agreement of facts shall not interfere with the dower of the said Selina Wallace, provided, if in law she is entitled to the same."

The portion of the deed, Exhibit "A," relevant to the inquiry is as follows:

"This indenture, made 25 February, 1889, between Elisha Wallace and wife, Penny Wallace, of the county of Johnston and State of North Carolina, of the first part, and C. A. Wallace, of the same county and State above written, of the second part.

"Witnesseth, that we, Elisha Wallace and wife, do, for and in consideration of the love and good will that we have for our son, C. A. Wallace, and for his better support, do by these presents loan and set over unto him, the above said C. A. Wallace, one tract or parcel of land to have and to hold during his natural lifetime, with the exception that we, the above said Elisha Wallace and wife, hold the above said land subject to our support and protection during our natural life. And then after the death of the above said C. A. Wallace, then said land to descend in fee simple to his bodily heirs, if any, and if none, to go to his next of kin," etc.

In the will of said C. A. Wallace, Exhibit "B," the land is devised to his widow, Selina H. Wallace, for life, and at her death to the children of R. I. Wallace. And upon these facts the court rendered judgment:

"This cause coming on to be heard before Hon. W. A. Devin, Judge presiding, at the September Term, 1920, of the Superior Court of Johnston County, North Carolina, and being heard upon the pleadings and an agreed statement of facts, Abell & Ward representing the petitioners; Wellons & Wellons representing the defendant, Selina Wallace; Parker & Martin representing the defendants, Ashley Wallace, Elisha Wallace, and R. I. Wallace; and S. S. Holt representing the defendant, Elisha Wallace, upon the motion of Parker & Martin and S. S. Holt, it is considered, ordered, adjudged, and decreed that the defendants, Ashley Wallace, Elisha Wallace, and R. I. Wallace, are the sole owners in fee as tenants in common, and are entitled to the immediate possession of the lands described in the petition in this cause."

From this judgment the petitioners, the nephews and nieces and the widow, Selina Wallace, appealed.

*Ed. S. Abell and Ed. F. Ward for plaintiffs.*
*Parker & Martin and S. S. Holt for defendants.*

HOKE, J. The deed of Elisha Wallace to his son, C. A. Wallace, conveys the land in question to said C. A. Wallace, "to have and to hold during his natural lifetime, subject to a life support for the grantors,

and after the death of C. A. Wallace the land is to descend in fee simple to his bodily heirs, if any, and if none, to go to his next of kin." The grantee having devised the property to his widow, remainder to the children of R. I. Wallace in fee, it becomes necessary to determine what is the nature and extent of the estate conveyed, the widow insisting that her husband took a fee simple estate under the rule in *Shelley's case.* In numerous decisions of the Court, many of them of recent date, this rule has been recognized as existent in this State, and it is held that when a limitation comes under the principle, it operates as a rule of property passing a fee simple both in deeds and wills, and regardless of a contrary intent on the part of the grantor.

In *Nobles v. Nobles,* 177 N. C., 245, the principle referred to is stated as follows: "So stated, the rule in question has always been recognized with us, and a perusal of these and other like cases will disclose 'that when the terms of the instrument by correct interpretation convey the estate in remainder to the heirs of the first taker as a class, 'to take in succession from generation to generation' to the same persons as those who would take as inheritors under our canons of descent and in the same quantity, the principle prevails as a rule of property both in deeds and wills and regardless of any particular intent to the contrary otherwise appearing in the instrument," citing *Crisp v. Biggs,* 176 N. C., 1; *Cohoon v. Upton,* 174 N. C., 88; *Ford v. McBrayer,* 171 N. C., 421; *Robeson v. Moore,* 168 N. C., 389; *Jones v. Whichard,* 163 N. C., 241; *Price v. Griffin,* 150 N. C., 523; *May v. Lewis,* 132 N. C., 115; *Nichols v. Gladden,* 117 N. C., 497.

And the same position is approved and impressively illustrated in *Leathers v. Gray,* 101 N. C., 163, overruling *S. c.,* 96 N. C., 548, and where the rule as understood and more frequently presented and applied in this jurisdiction is thus stated by *Merrimon, Judge:* "That whenever an ancestor by any gift or conveyance took an estate of freehold, as an estate for life, and in the same gift of conveyance an estate is limited either mediately or immediately to his heirs or to the heirs of his body as a class to take in succession as heirs to him, such words are words of limitation of the estate and convey the inheritance, the whole property to the ancestor, and they are not words of purchase."

From these and other authorities it will be noted that in order to an application of the rule in *Shelley's case* (being contrary as it is to the expressed will of the grantor that the first taker should have a life estate only), the words "heirs" or "heirs of the body" must be taken in their technical sense, carrying the estate to the entire line of heirs, and at this time and in this jurisdiction to hold as inheritors under our canons of descent, and if it appears by correct construction that these words are not used in that sense, but only as words designating certain persons or

confining the inheritance to a restricted class of heirs, the rule does not apply, and the ancestor or first taker will be held to have acquired only a life estate, according to the express words of the instrument.

Thus in the case of *Puckett v. Morgan,* 158 N. C., 344, a devise to "M. of certain lands during her life, then to her bodily heirs, if any, but if she have none, back to her brothers and sisters," the Court was of opinion that, from a perusal of the entire devise, the words "heirs of the body, if she have any," with an ultimate limitation to her brothers and sisters, showed clearly that the words "heirs of the body" were not used in their technical sense, but were intended to mean children or issue, and the estate by correct interpretation was "to M. for life, remainder to her children in fee and in default of children, over to the brother and sister," citing numerous cases in support of the position. And in the subsequent case of *Jones v. Whichard,* 163 N. C., 241, a father conveyed to his son a tract of land, "to have and to hold the same to said Robert M. Jones and Martha M. Jones, his wife, during their natural life, and then to their legal bodily heirs, provided they leave any, and if not, to be equally divided among my nearest of kin," etc.

The case of *Puckett v. Morgan, supra,* was held to be controlling, and, stating the principle applicable, the Court said: "In approval and illustration of the rule as stated, there are many decisions here and elsewhere to the effect that, in order to its proper application, the words 'heirs' or 'heirs of the body' (these last by reason of our statute, Rev., 1578), must be used in their technical sense, carrying the estate to such heirs as an entire class to take in succession from generation to generation, and they must have the effect to convey 'the same estate to the same persons, whether they take by descent or purchase,' and, whenever it appears from the context or from a perusal of the entire instrument that the words were not intended in their ordinary acceptation of words of inheritance, but simply as a *descriptio personarum* designating certain individuals of the class, or that the estate is thereby conveyed to 'any other person in any other manner or in any other quality than the canons of descent provide,' the rule in question does not apply, and interest of the first taker will be, as it is expressly described, an estate for life." Citing, also, for the position, *Puckett v. Morgan,* 158 N. C., 344; *Smith v. Proctor,* 139 N. C., 314; *Wool v. Fleetwood,* 136 N. C., 460-470; *May v. Lewis,* 132 N. C., 115; *Whitesides v. Cooper,* 115 N. C., 570; *Mills v. Thorne,* 95 N. C., 362; *Ward v. Jones,* 40 N. C., 404.

The same principle was applied in the later case of *Blackledge v. Simmons,* 180 N. C., 535, the Court being of opinion that, on perusal of the entire instrument, it appeared that the words "heirs of her body" were not intended to be words of general inheritance, but were used in a more restricted sense.

Considering the present deed in view of these authorities, the estate being conveyed to C. A. Wallace for life, and after his death "to his bodily heirs in fee simple, if any, and if none, to go to his next of kin," the limitation comes directly under the decisions of *Jones v. Whichard,* 163 N. C., 241, and *Puckett v. Morgan,* 158 N. C., 344, and that line of cases to the effect that the words "heirs of body" here are used in the sense of children or issue, and the estate conveyed is to C. A. Wallace for life, remainder to his children or issue, if any, and then over. And under *May v. Lewis,* 132 N. C., 115, the limitation over being to the next of kin of the grantee, should be held as a limitation affecting his estate by confining the descent potentially to a restricted class of heirs, to wit, his "nearest of kin," and so preventing the application of the rule in *Shelley's case* on that ground. This, in our opinion, being the true construction of the deed, C. A. Wallace, under the primary limitation having only a life estate, could not pass any interest by his will, and for the same reason his widow is not entitled to dower, the husband having never been seized of an estate of inheritance. And considering the facts further, the grantee, C. A. Wallace, having died without children or issue to take under the deed, the question recurs as to who are entitled under the ulterior limitation to "his next of kin," the claimants being respectively his three surviving brothers, his widow, and the children of deceased brothers and sisters. On this question it has been held in this jurisdiction, in a long line of cases in which the question was directly considered, that these words mean "nearest of kin," and that in the construction of deeds and wills, unless there are terms in the instrument showing a contrary intent, the words "next of kin," without more, do not recognize or permit the principle of representation. *Redmond v. Burroughs,* 63 N. C., 242; *Harrison v. Ward,* 58 N. C., 236; *Davenport v. Hassel,* 45 N. C., 29; *Simmons v. Gooding,* 40 N. C., 382; *Peterson v. Webb,* 39 N. C., 56; *Henry v. Henry,* 31 N. C., 278.

In *Redmond v. Burroughs, supra,* the suggestion was made that the term "next of kin" should receive its technical meaning that was usually given it in construing the statute of distribution, so including the principle of representation, but the Court, in rejecting the suggestion, called attention to the fact that the principle of representation as it prevailed in the statute did not arise from the use of the term "next of kin," but by reason of further words appearing therein, to wit, "next of kin of equal degree, and those who legally represent them." And to show how consistently the Court has adhered to this ruling as the correct principle of interpretation, in the closing portion of his opinion in *Harrison v. Ward, supra, Manly, Judge,* speaks to the question as follows: "In the case of *Simmons v. Gooding, supra,* the Court felt constrained by the weight of authority, and we now feel constrained by that, and the force

WALLACE *v.* WALLACE.

of our own decision, to hold the words 'next of kin' in the will in question to mean the 'nearest in degree,' and that the sister of the deceased brother, Benjamin, will take the slave property limited to him for life, to the exclusion of the nephew and niece.

"The able argument which has been addressed to us upon this point has caused us to consider it again more at large than we might otherwise have done, and we are again brought to the same conclusion. We do not feel at liberty to depart from the construction heretofore adopted—a construction, it may be added, which has the sanction of the most eminent judges, Thurlow, Eldon, Grant, Plumer, and others. Those who are desirous of examining the authorities upon this vexed question will find them referred to by Jarman in his treatise on Wills, vol. 2, p. 38.

"The construction which we thus put upon the will may disappoint the expectations of defendant's friends, and work a case of hardship not foreseen and not desired by the testator, but it cannot be otherwise without unsettling again the sense of words which it has given the courts great trouble to fix, and which the public interest now requires should remain so."

Again, in these and other decisions on the subject, it is held uniformly so far as examined that the term, as the equivalent of "nearest of kin," signifies "nearest of blood-kin," and that relationship by marriage is not within its proper meaning. Thus, in *Jones v. Oliver,* 38 N. C., 369, the testator died leaving a will in which there was an ulterior limitation to the "next of kin of himself and of his wife." The widow having remarried and died, her husband made claim to a portion of the property as her next of kin, and it was held that the limitation was to the nearest of kin by blood, and the husband was excluded. And it was so directly held in *Peterson v. Webb,* 39 N. C., 56. The same rule prevailed in England as to the meaning of the words "next of kin," *Elmesly v. Young,* 2 Myl. K., 780; and courts of the highest authority in this country have also approved the position. *Swazey v. Jacques,* 144 Mass., 135; *Locke v. Locke et al.,* 45 N. J. Equity, 97.

In an elementary work of recognized merit, it is said that the courts in this country have very generally held that "next of kin," when unexplained by the context, means "next of kin according to the statute of distributions," but we doubt if the statement is justified as the rule of interpretation for deeds and wills. Thus, in one of the authorities sometimes referred to in illustration of such a statement, *Blagge v. Balch,* 162 U. S., 439, the Court, in upholding the principle of representation, was passing on the distribution of a portion of the French spoilation claims dependent and determined on the construction of the act of Congress controlling in the matter, and in *Seabright v. Seabright,* 48 W. Va., the Court was construing a statute excluding the evidence of certain

persons in suits against "next of kin," and it was held that the scope and purpose of the statute justified and required the interpretation that the term "next of kin" should include all of those who took and held a pecuniary interest under the statute of distributions, but both of these able Courts recognized that in the interpretation of deeds and wills the principle of representation was ordinarily excluded in the use of the term "next of kin." But however this may be, it is beyond question the settled principle of construction in this State that unless the instrument shows a contrary intent, the words "next of kin" mean "nearest of kin," and that the principle of representation is excluded.

There is nothing in *May v. Lewis*, 132 N. C., 115, that is in necessary conflict with this position. That was a case involving the question whether the grantee under the deed could convey a valid title, and dependent on whether the rule in *Shelley's case* applied, the limitation being to the grantee for life, and then to his heirs, if any, and if none, to revert back to his next of kin. After holding that a good title could not be presently made as the term "next of kin" might serve to withdraw the limitation from our general canons of descent, the Court, in an opinion by our former associate, *Justice Connor,* and by way of illustration, merely quoted 21 A. & E. Enc. to the effect, "That it was very generally held in the United States that the term 'next of kin' meant 'next of kin' according to the statute of distributions, meaning, no doubt, that the term meant only 'nearest of kin,' as our cases construing the statute had uniformly held. And we are well assured that this able and learned judge, who has ever evinced a wholesome regard for established precedent as affording a dependable base line for all intelligent and well ordered progress, had no intent in this casual reference to break down or set aside a long line of well considered decisions so uniform and consistent as to establish the contrary principle as a rule of property on which many titles must depend."

In accord with these principles we must affirm the judgment of the court below and hold that C. A. Wallace took only a life estate under the deed from his father, and that under the ulterior limitation to his next of kin the property belongs to his surviving brothers and sisters to the exclusion of the widow and his nephews and nieces.

Judgment affirmed.